516 P.2d 679 (1973)
85 N.M. 708
Gene GOMEZ, Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF the DULCE INDEPENDENT SCHOOL DISTRICT NO. 21 et al., and Joe Baca, Sr., George Ballard, Emmett Lynch, Grace Pettus, Edwin Sandoval, its members; Garfield J. Gutierrez, its Superintendent; and William Lemon, Director of the School Transportation Division of the State Department of Education, State of New Mexico, Defendants-Appellees.
No. 9763.
Supreme Court of New Mexico.
November 30, 1973.
*680 Bigbee, Byrd, Carpenter & Crout, Jay C. Carlisle, II, Paul D. Gerber, Santa Fe, for plaintiff-appellant.
Thomas O. Olson, Albuquerque, for Lynch and Sandoval.
Charles S. Solomon, Santa Fe, for Bd. of Education, Superintendent Gutierrez, and Baca, Ballard and Pettus.
David L. Norvell, Atty. Gen., C. Emery Cuddy, Jr., Asst. Atty. Gen., Santa Fe, for Lemon, Director of School Trans. Div.

OPINION
MONTOYA, Justice.
This is an appeal by plaintiff (appellant) from a judgment of dismissal rendered in favor of defendants in an action brought by plaintiff seeking damages from defendants as a result of their decision to cancel or, in the alternative, not renew the plaintiff's bus service contract with the Dulce Independent School District. For convenience, the parties will be referred to as they appeared below.
The facts alleged in plaintiff's complaint, deemed admitted by the motion to dismiss, are as follows: Plaintiff entered into a four-year contract with defendant Board of Education, Dulce Independent School District No. 1, to furnish bus transportation for school children for the period 1965 to June 1970. This contract was renewed in August 1970, for a period of one year ending June 1971. Plaintiff performed his duties under the contract in a competent and satisfactory manner and alleges he had a reasonable expectancy that the contract would be renewed for the 1971-1972 school *681 year, and then for an additional period of four years, and that such oral representations had been made to him by the defendant board and the defendant superintendent. The board of education, the individual members thereof, its superintendent, and the state director of school transportation William Lemon, are all named defendants. Plaintiff alleges oral representations were made by defendants that, if his services were satisfactory, a similar bid could be submitted at the expiration of the latter four-year period and that it would be accepted. In October 1970, plaintiff and other individuals filed an election contest in Cause No. 11220, Rio Arriba County District Court. While said legal proceedings were pending, the named defendants, at a special meeting held on June 28, 1971, determined to cancel plaintiff's contract or, in the alternative, not to renew his contract for the year 1971-1972. By letter, plaintiff was advised his bus contract was not renewed and that the board's decision was based on plaintiff's legal action against the defendant board which, in the latter's belief, constituted cause for such action. The letter was signed in behalf of the board by its superintendent, also a named defendant, with a carbon copy of said letter to be forwarded to defendant Lemon, the state transportation director. It was further alleged by plaintiff, on information and belief, that defendant Lemon approved, condoned and otherwise supported the board's action. Plaintiff claims such action not to renew the contract was unreasonable, arbitrary and capricious, and that such action constituted a deprivation of plaintiff's right to freedom of speech and association and substantive due process under the United States and State Constitutions. Plaintiff further alleges that his cause of action arises under 42 U.S.C. § 1983 (1871), and under the Federal and State Constitutions. Plaintiff then alleges that, by reason of the foregoing, he suffered certain damages.
Thereafter, defendants board, board members and its superintendent, filed motions to dismiss on grounds that the complaint failed to state a cause of action upon which relief could be granted because the suit could not be maintained against a public body, or its officers acting in an official capacity. Defendant Lemon filed a similar motion, alleging said lawsuit could not be brought against a state official for actions performed in an official capacity, and that plaintiff failed to allege the performance by defendant Lemon of any action abridging the civil rights of plaintiff. Upon hearing oral argument on the motions to dismiss, the trial court dismissed the action with prejudice and this appeal followed.
Plaintiff contends (1) that the trial court erred in dismissing his complaint for failure to state a claim upon which relief can be granted; and (2) that error was committed by the trial court in holding that this particular action cannot be brought against a public body, or against its officers acting in their official capacity, or against a state official for actions performed in his official capacity.
In discussing the issues involved, it would be appropriate to quote the statute under which the cause of action is based, 42 U.S.C. § 1983 at 201 (1871), which reads as follows:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
The trial court having granted a motion to dismiss for failure to state a claim upon which relief can be granted, the applicable rule to be followed is to accept as true all facts well pleaded and question only whether the plaintiff might prevail under any state of facts provable under the claim. Jones v. International Union of Operating Engineers, 72 N.M. 322, 383 P.2d *682 571 (1963). In examining the above statute under which this action is brought, it is apparent that the statutory prerequisites for liability under § 1983, supra, are that the defendants must have acted under color of law, regulation, custom or usage of the State of New Mexico, and that the plaintiff must have been deprived of federal constitutional rights, privileges and immunities. We believe that the first statutory requirement or prerequisite to stating a claim has been met in this case, since the defendants are state officials, local officials and employees, who acted under the authority of statutes, regulations, custom or usage of the State of New Mexico, and the complaint so alleges in those very terms.
The next question in testing the sufficiency of the complaint is whether the second prerequisite under § 1983, supra, has been met. In other words, has there been a deprivation of a federal constitutional right? This poses a more difficult problem.
Though this is a question of first impression, which has not heretofore been considered by this court, we are fortunate in having many decisions by our federal courts which have faced the same issue confronting us. The complaint concedes that no actual contract is involved, rather it is based on the premise that there was a "reasonable expectancy" that the bus contract in question would remain in effect or be renewed, except for the suit filed by the plaintiff against the school board.
In considering a similar issue, the statements made by the United States Court of Appeals, Fifth Circuit, in Pred v. Board of Public Instruction of Dade County, Fla., 415 F.2d 851 (5th Cir.1969), are particularly applicable. In that case, plaintiffs-teachers filed a complaint charging public school authorities with purposely declining to renew their teaching contracts and grant tenure, because of the plaintiffs' exercise of First Amendment rights of speech and association. The federal district court dismissed the complaint and, on appeal, the circuit court reversed, holding that the allegations that plaintiffs-teachers were denied fourth year contracts which would insure tenure, because of participation by each in teachers' association to protect interests of teachers, stated a cause of action denying them their First Amendment rights. The Fifth Circuit Court, in deciding the case, said (415 F.2d at 856):
"* * *. In effect the school authorities assert that the teachers were not deprived of their rights, for neither was prevented from speaking, writing, and believing as he chose. If they wished to propagandize, simply do it elsewhere, not as public school teachers. But as Judge Learned Hand said years ago in Bomar v. Keyes, 2 Cir., 1947, 162 F.2d 136, 139. `It would emasculate the [Civil Rights] act * * * to leave without recourse those who were later made the victims of reprisals of which they had not been warned.' More than that it would sap the Constitution of its vital force in relation to public employees. It would, in the area of First Amendment rights, be to throw out this Hobson's choice: speak or work. Moreover, the execution of any such policy through discharge or non-reemployment would have both a specific and a general impact. It would, as to the individual concerned, be to cut him off from work and income. But to others the consequence might well be more serious. It would be the warning that others would suffer the same fate so that eventually there would be workers, but not speaking or feeling free to speak, they would be silent workers. And in the teaching community we must recall that `"[t]he threat of sanctions may deter * * * almost as potently as the actual application of sanctions." N.A.A.C.P. v. Button [1963, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405, 418] * * * The danger of that chilling effect upon the exercise of vital First Amendment rights must be guarded against by sensitive tools which clearly inform teachers what is being prescribed.' Keyishian v. *683 Board of Regents, supra, 385 U.S. [at] 604, 87 S.Ct. at 684, 17 L.Ed.2d at 641.
"Equally unpersuasive is the related argument that since there is no constitutional right to public employment, school officials only allowed these teachers' contracts to expire, and thus they cannot be liable for a violation of any rights protected by § 1983. But in the posture of this case this misconceives the whole thrust of their claim. The right sought to be vindicated is not a contractual one, nor could it be since no right to reemployment existed. What is at stake is the vindication of constitutional rights  the right not to be punished by the State or to suffer retaliation at its hand because a public employee persists in the exercise of First Amendment rights.
"Yet in the face of the strong allegations which must now be credited * * * this bold position, accepted by the Trial Court, claims the very power purposely to retaliate and discriminate as a punitive, coercive depressant so long as no contractual (or appropriate local statutory) right to employment is violated. But the State may not deny the Constitution, and the Civil Rights Act by its terms makes the state-actor `liable * * * in an action at law' to the victim for the deprivation of any rights * * * secured by the Constitution * * *."
A most recent expression on this subject of the Supreme Court of the United States in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), affirmed the principle that nonrenewal of a teacher's contract would violate the Fourteenth Amendment if it was in fact based on his protected free speech. The court went on to hold that lack of a contractual or tenure right to reemployment, taken alone, did not defeat respondent's claim that the nonrenewal of his contract violated his free speech right under the First and Fourteenth Amendments. The explicit language of our highest court is particularly relevant and determinative of the issue before us. The Supreme Court of the United States, speaking through Mr. Justice Stewart, said (408 U.S. at 596, 92 S.Ct. at 2697, 33 L.Ed.2d at 577):
"The first question presented is whether the respondent's lack of a contractual or tenure right to re-employment, taken alone, defeats his claim that the nonrenewal of his contract violated the First and Fourteenth Amendments. We hold that it does not.
"For at least a quarter century, this Court has made clear that even though a person has no `right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not act. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests  especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to `produce a result which [it] could not command directly.' Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. Such interference with constitutional rights is impermissible.
"* * *.
"Thus the respondent's lack of a contractual or tenure `right' to re-employment for the 1969-1970 academic year is immaterial to his free speech claim. Indeed, twice before, this Court has specifically held that the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights. Shelton v. Tucker, supra [364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231]; Keyishian v. Board of Regents, supra [385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d *684 629]. We affirm those holdings here.
"In this case, of course, the respondent has yet to show that the decision not to renew his contract was, in fact, made in retaliation for his exercise of the constitutional right of free speech. The District Court foreclosed any opportunity to make this showing when it granted summary judgment. Hence, we cannot now hold that the Board of Regents' action was invalid.
"But we agree with the Court of Appeals that there is a genuine dispute as to `whether the college refused to renew the teaching contract on an impermissible basis  as a reprisal for the exercise of constitutionally protected rights.' 430 F.2d [939], at 943. The respondent has alleged that his nonretention was based on his testimony before legislative committees and his other public statements critical of the Regents' policies. And he has alleged that this public criticism was within the First and Fourteenth Amendment's protection of freedom of speech. Plainly, these allegations present a bona fide constitutional claim. For this Court has held that a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment. Pickering v. Board of Education, supra [391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811].
"For this reason we hold that the grant of summary judgment against the respondent, without full exploration of this issue, was improper."
The plaintiff in this case alleges in his complaint that his contract was cancelled, or not renewed, because of the legal action he had instituted with others against the school board. In fact, the letter (attached to the complaint) written at the direction of the board expressly states that plaintiff's legal actions against the board constituted cause for nonrenewal of the bus contract. We feel that plaintiff's participation in a lawsuit against the board is a constitutionally protected right which falls under the rights covered by § 1983, supra. In this connection, the language used by the Supreme Court of the United States in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), is applicable to this proposition. The United States Supreme Court, speaking through Mr. Justice Marshall, said (391 U.S. at 568, 88 S.Ct. at 1734, 20 L.Ed.2d at 817):
"To the extent that the Illinois Supreme Court's opinion may be read to suggest that teachers may constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work, it proceeds on a premise that has been unequivocally rejected in numerous prior decisions of this Court. E.g., Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). `[T]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected.' Keyishian v. Board of Regents, supra, 385 U.S. at 605-606, 87 S.Ct. at 685 [17 L.Ed.2d at 642]. At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. * * *"
In that case, though a lawsuit against the board of education was not involved, the teacher in question had been dismissed for writing and publishing a letter in a newspaper critical of the board's allocation of school funds and the board's handling of bond issue proposals. We feel that the same reasoning and principles apply in the instant case. The Supreme Court of the United States went on to say that, even if *685 some of the statements published in the letter were false, they concerned issues of public concern and it was neither shown nor could it be presumed to interfere with the teacher's performance of his duties, or the operation of the school and, therefore, were subject to the same First Amendment protection as if made by any other member of the public, absent proof that they were knowingly or recklessly made.
Defendants contend that Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), is controlling and requires affirmance of the trial court's judgment of dismissal. It is interesting to note that Roth, supra, was decided on the same day as Perry v. Sindermann, supra, and the majority opinion in both cases was written by Mr. Justice Stewart. Roth, supra, was concerned only with the entitlement of a dismissed teacher, who had been employed under a one-year contract and not rehired for the subsequent year. Mr. Justice Stewart stated the scope of the issue involved when he stated (408 U.S. at 569, 92 S.Ct. at 2705, 33 L.Ed.2d at 556):
"* * *. The only question presented to us at this stage in the case is whether the respondent had a constitutional right to a statement of reasons and a hearing on the University's decision not to rehire him for another year. We hold that he did not."
It is apparent that Roth, supra, dealt only with the issue of procedural due process under the Fourteenth Amendment, while Perry, supra, dealt with that same issue and the additional issue of whether the (408 U.S. at 596, 92 S.Ct. at 2697, 33 L.Ed.2d at 577)
"* * * lack of a contractual or tenure right to re-employment, taken alone, defeats his [Perry's] claim that the nonrenewal of his contract violated the First and Fourteenth Amendments. * * *"
The distinction between the two cases, as Mr. Justice Stewart points out in Perry, supra, is based upon the claim made in the latter case, that though his interest in continued employment (408 U.S. at 599, 92 S.Ct. at 2699, 33 L.Ed.2d at 579),
"* * *. though not secured by a formal contractual tenure provision, [it] was secured by a no less binding understanding fostered by the college administration. * * *"
Perry alleged, in his complaint, that the college had a de facto tenure program and that he had tenure under that program. Mr. Justice Stewart explains the holding in Roth, supra, as follows (408 U.S. at 599, 92 S.Ct. at 2698, 33 L.Ed.2d at 578):
"We have held today in Board of Regents v. Roth [citation omitted], that the Constitution does not require opportunity for a hearing before the nonrenewal of a nontenured teacher's contract, unless he can show that the decision not to rehire him somehow deprived him of an interest in `liberty' or that he had a `property' interest in continued employment, despite the lack of tenure or a formal contract. In Roth the teacher had not made a showing on either point to justify summary judgment in his favor."
The next point raised by plaintiff is that the trial court erred in holding that this particular action cannot be maintained because it was brought against a public body and its officers acting in an official capacity, or against a state official for actions performed in his official capacity. This raises the question whether the doctrine of sovereign immunity, as applied by this court in the past, is controlling.
In City of Albuquerque v. Garcia, 84 N.M. 776, 508 P.2d 585 (1973), we made some statements which, although not decisive of that case, serve to indicate the inclination of this court to re-examine our case law regarding the concept of court-created immunity. We said (84 N.M. at 778, 508 P.2d at 587):
"As to sovereign immunity, that doctrine, insofar as it has been created by courts, seems headed for a deserved repose. Courts and scholars can find little *686 reason for it, and its historical basis is of doubtful validity. This case is not an appropriate one in which to review or reconsider court-created sovereign immunity because the immunity which the court below held had been created stemmed from an act of the legislature."
As in that case, we have involved here a statutory provision that persuades us not to reconsider the immunity question in its totality. Because there are hardly any state decisions interpreting § 1983, supra, and there is a great body of federal decisional law on this proposition, we look to that source for precedent in resolving the issue before us. In examining the many federal cases regarding absolute immunity for tort liability, three approaches seem to have evolved and they are concisely stated in Roberts v. Williams, 456 F.2d 819, 830-831 (5th Cir.1971), in the following language:
"* * *. In Norton [Norton v. McShane, 332 F.2d 855 (5th Cir.1964)], however, we intimated that the immunity of state officials under 42 U.S.C. § 1983 `may be given more limited application', p. 861, and in Anderson v. Nosser, 438 F.2d 183, modified on rehearing 456 F.2d 835 (5th Cir.1971) this circuit refused to allow immunity under state law to the officials involved, with respect to their § 1983 liability. There is authority in other circuits that the personal immunity under § 1983 of state or local officials, not judges or legislators, cannot be decided solely by reference to local law. McLaughlin v. Tilendis, 398 F.2d 287, (7th Cir.1968); Nelson v. Knox, 256 F.2d 312 (6th Cir.1958)."
McLaughlin v. Tilendis, 398 F.2d 287, 290 (7th Cir.1968), involved the applicability of statutorily created immunity under Illinois law. There the United States Court of Appeals, in reversing the United States District Court which had granted a motion to dismiss when non-tenure teachers complained they were dismissed because of union membership, stated:
"The second ground of defendants' motion to dismiss was that they are protected against suit by the Illinois Tort Immunity Act (Ill.Rev.Stats. 1967, Ch. 85, Sec. 2-201). Under the Supremacy Clause, that statute cannot protect defendants against a cause of action grounded, as here, on a federal statute. Legislators and judges have broad immunity under Section 1983 because in enacting that statute Congress did not intend to overturn their pre-existing defense. Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019; Pierson v. Ray, 386 U.S. 547, 554-555, 87 S.Ct. 1213, 18 L.Ed.2d 288. However, other officials, such as present defendants, retain only a qualified immunity, dependent on good faith action. Pierson v. Ray, supra, at p. 555, 87 S.Ct. 1213; Note, The Doctrine of Official Immunity under the Civil Rights Acts, 68 Harv.L.Rev. 1229, 1235-1236 (1955); Note, The Proper Scope of the Civil Rights Act, 66 Harv.L.Rev. 1285, 1299 (1953). Even under the Illinois Act, immunity is conditioned upon a showing of good faith (Baum, Tort Liability of Local Governments and Their Employees: An Introtion to the Illinois Immunity Act, Ill.Law Forum (1966) 981, 1003-1004), and there has been no hearing on that question. In this Court and in their brief below the defendants also rely on common law immunity, but we rejected a similar contention in Progress Development Corp. v. Mitchell, 286 F.2d 222, 231 (7th Cir.1961), where it was held that common law immunity did not extend to members of the Deerfield, Illinois, Park Board charged with discriminating against Negroes. Unless they can show good faith action, the reach of that decision extends to the present defendants who are alleged to have discriminatorily discharged Steele and McLaughlin for their union membership. To hold defendants absolutely immune from this type of suit would frustrate the very purpose of Section 1983. Jobson v. Henne, 355 F.2d 129, 133 (2nd Cir.1966). At best, defendants' qualified immunity in this case means that they can prevail only if they *687 show that plaintiffs were discharged on justifiable grounds. Thus here a successful defense on the merits merges with a successful defense under the qualified immunity doctrine."
We agree that to grant absolute immunity in the instant case would make the provisions of § 1983, supra, meaningless. We have found no better expression for the reasoning that immunity in a qualified form is applicable than is set forth in Jobson v. Henne, 355 F.2d 129, 133 (2nd Cir.1966), as follows:
"It should be equally clear that both the language and the purpose of the Civil Rights Acts are inconsistent with the application of common law notions of official immunity in all suits brought under these provisions. See Norton v. McShane, 332 F.2d 855, 861 (5th Cir.1964), cert. denied, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965). In suits brought under § 1983 an indispensable element of a plaintiff's case is a showing that the defendant (or defendants) acted `under color of any statute, ordinance, regulation, custom, or usage, of any State * * *.' 42 U.S.C. § 1983. This test can rarely be satisfied in the case of anyone other than a state official. See Collins v. Hardyman, 341 U.S. 651, 662, 71 S.Ct. 937, 95 L.Ed. 1253 (1951). To hold that all state officials in suits brought under § 1983 enjoy an immunity similar to that they might enjoy in suits brought under state law `would practically constitute a judicial repeal of the Civil Rights Acts.' Hoffman v. Halden, 268 F.2d 280, 300 (9 Cir.1959). Furthermore, and perhaps more basically, the purpose of § 1983 as well as the other Civil Rights provisions is to provide a federal remedy for the deprivation of federally guaranteed rights in order to enforce more perfectly federal limitations on unconstitutional state action. To hold all state officers immune from suit would very largely frustrate the salutary purpose of this provision. We conclude the defense of official immunity should be applied sparingly in suits brought under § 1983. Cf. Robichaud v. Ronan, 351 F.2d 533 (9 Cir.1965)."
In view of the foregoing, we hold that in considering the existence of liability on the part of the defendants herein, the application of the doctrine of qualified immunity is appropriate, if there is a showing of good faith on their part for the action complained of by the plaintiff. See McLaughlin v. Tilendis, supra. We further feel that the determination of good faith in the instant case involves the development and evaluation of facts and, accordingly, the granting of the motion to dismiss was in error.
Therefore, the judgment of the trial court, holding that the complaint fails to state a claim upon which relief can be granted, is reversed without any intention on our part to express what the final disposition should be when the real facts, not what the complaint alleges, are developed, if they can be, and for further proceedings consistent with this opinion.
It is so ordered.
McMANUS, C.J., and STEPHENSON, J., concur.