866 P.2d 344

Chris **ARCHIBEQUE,** Plaintiff-Appellant,

v.

Donna **MOYA,** as an individual and in her official capacity, Defendant-Appellee.

No. 21359.

Supreme Court of New Mexico.

Dec. 15, 1993.

Joseph P. Kennedy, Albuquerque, for plaintiff-appellant.

Jeffrey L. Baker & Associates, Rosemary Dillon, Albuquerque, for defendant-appellee.

Paul M. Schneider, Santa Fe, for amicus curiae Risk Management Div.

## *OPINION*

BACA, Justice.

Pursuant to NMSA 1978, Section 34-2-8 (Cum.Supp.1993) and SCRA 1986, 12-607 (Repl.Pamp.1992), we accepted the following certified question of state law from the Tenth Circuit Court of Appeals:

Does [NMSA 1978, Section 41-4-6 (Repl. Pamp.1989)] of the New Mexico Tort Claims Act, [NMSA 1978, Sections 41-4-1 to -29 (Repl.Pamp.1989 & Cum.Supp. 1993)], provide immunity from tort liability to an employee of the state penitentiary whose alleged negligence in releasing a

prisoner into the general prison population, which included known enemies of the prisoner, resulted in the prisoner being beaten and injured by one of his enemies? We hold that immunity is not waived under Section 41–4–6.

## I.

Plaintiff–Appellant, Chris Archibeque ("Archibeque"), a prisoner at the Central New Mexico Correction Facility, was transferred to the New Mexico State Penitentiary in Santa Fe (the "penitentiary") on October 18, 1988. Before being released into the general prison population, Archibeque met with Defendant–Appellee Donna Moya–Martinez ("Moya–Martinez"), a prison intake officer. The purpose of this meeting was to discuss whether Archibeque had any known enemies within the general prison population. During the meeting, Archibeque told Moya–Martinez that Alex Gallegos ("Gallegos") was one of his enemies. Moya–Martinez, without checking an available printout of current inmates, told Archibeque that Gallegos was no longer imprisoned at the penitentiary. Moya–Martinez permitted Archibeque to be released into the general prison population. That night, Archibeque was assaulted by Gallegos and several other inmates in the prison weight room.

Archibeque brought a lawsuit in federal district court against Moya–Martinez and other employees of the New Mexico Department of Corrections. Archibeque sought damages under 42 U.S.C. § 1983 (1988), for alleged civil rights violations. Archibeque also sought damages under state law, claiming that his injuries resulted from the negligent operation of the prison facilities and that Section 41–4–6 acted to waive immunity for Moya–Martinez and other corrections employees who had acted negligently.

Prior to trial, the federal district court dismissed Archibeque's claim of negligent operation of the penitentiary. The district court interpreted Section 41–4–6 narrowly and held that the statute did not waive im-

munity for negligent security and custody of inmates at the penitentiary. Thereafter, Archibeque's civil rights claims were resolved in favor of Moya–Martinez and the other corrections employees.[1] The federal district court denied Archibeque's motion for reconsideration. Archibeque appealed, raising the question certified to this Court by the Tenth Circuit Court of Appeals.

## II.

The potential tort liability of governmental entities and public employees is limited by the Tort Claims Act. *See Pemberton v. Cordova,* 105 N.M. 476, 477, 734 P.2d 254, 255 (Ct.App.1987). Section 41–4–4(A) provides that governmental entities and public employees acting within their scope of duty "are granted immunity from liability for any tort except as waived by Sections 41–4–5 through 41–4–12." Thus, the Act shields governmental entities and public employees from tort liability unless immunity is specifically waived by the Act. *Wittkowski v. State,* 103 N.M. 526, 529, 710 P.2d 93, 96 (Ct.App.), *cert. quashed,* 103 N.M. 446, 708 P.2d 1047 (1985), *overruled on other grounds, Silva v. State,* 106 N.M. 472, 477, 745 P.2d 380, 385 (1987). At issue in this case is the interpretation of the waiver of immunity found in Section 41–4–6, the Act's "premises liability" statute, which states in relevant part:

The immunity granted pursuant to [Section 41–4–4(A)] does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings.

Archibeque argues that Moya–Martinez was participating in the operation of the penitentiary when she classified Archibeque as an inmate that could safely be released into the general prison population. Archibeque contends that Moya–Martinez's alleged negli-

---

1. All of the corrections employees were granted summary judgment before trial except for Moya–Martinez. The case proceeded to trial against Moya–Martinez on Archibeque's civil rights claims. After a bench trial, the federal district court found that Moya–Martinez was not indifferent to Archibeque's rights and dismissed all claims against her.

gence in misclassifying Archibeque and releasing him into the general population constituted negligent operation of the penitentiary and was effective to waive immunity under Section 41–4–6.

■ We do not agree with Archibeque that immunity is waived under Section 41–4–6. In two factually similar cases, the Court of Appeals has rejected arguments that are nearly identical to Archibeque's argument. In *Wittkowski*, the decedent's personal representative and survivors sued the New Mexico State Police, the New Mexico Department of Corrections, and various prison officials after two inmates, misclassified as minimum security prisoners, escaped from a low security work project, crossed into Colorado, and killed the decedent during the robbery of a liquor store. 103 N.M. at 527–28, 710 P.2d at 94–95. On appeal, following the trial court's dismissal of the lawsuit, the plaintiffs contended that the Department's immunity was waived under Section 41–4–6. *Id.* at 530, 710 P.2d at 97. The plaintiffs argued that Section 41–4–6 applied to waive immunity because the operation of the penitentiary included the security, custody, and classification of inmates, and the negligent classification of the inmates facilitated their escape and ultimately lead to decedent's death. *Id.* The Court of Appeals rejected plaintiffs' argument and interpreted Section 41–4–6 narrowly, holding that the statute did not apply to waive immunity because "the injuries alleged did not occur due to a physical defect in a building." *Id.*

The Court of Appeals subsequently applied the holding of *Wittkowski* in *Gallegos v. State*, 107 N.M. 349, 758 P.2d 299 (Ct.App. 1987), *cert. quashed*, 107 N.M. 314, 757 P.2d 370 (1988). In *Gallegos*, the plaintiff, a former inmate of the penitentiary, brought suit for damages resulting from injuries he sustained when other inmates assaulted him with a mop wringer. 107 N.M. at 350–51, 758 P.2d at 300–01. After the trial court granted the State's motion for summary judgment, the plaintiff appealed, claiming that immunity was waived under Section 41–4–6 because failure to keep the mop wringer outside the inmates' living area constituted negligent maintenance of the penitentiary.

*Id.* at 351, 758 P.2d at 301. The Court of Appeals disagreed, and, applying the rationale of *Wittkowski*, held that immunity was not waived under the plain language of Section 41–4–6. *Id.*

■ We apply the rule from *Wittkowski* and *Gallegos* and hold that Moya–Martinez's immunity is not waived by Section 41–4–6. The "operation" and "maintenance" of the penitentiary premises, as these terms are used in Section 41–4–6, does not include the security, custody, and classification of inmates. *See Gallegos*, 107 N.M. at 351, 758 P.2d at 301; *Wittkowski*, 103 N.M. at 530, 710 P.2d at 97. The purpose of Section 41–4–6 is to ensure the general public's safety by requiring public employees to exercise reasonable care in maintaining and operating the physical premises owned and operated by the government. *Castillo v. County of Santa Fe*, 107 N.M. 204, 206–07, 755 P.2d 48, 50–51 (1988). Moya–Martinez was not operating and maintaining the prison's physical premises when she negligently classified Archibeque as an inmate that could be released into the general prison population. Rather, she was performing an administrative function associated with the operation of the corrections system. Section 41–4–6 does not waive immunity when public employees negligently perform such administrative functions. To read Section 41–4–6 as waiving immunity for negligent performance of administrative functions would be contrary to the plain language and intended purpose of the statute. *See State v. Riddall*, 112 N.M. 78, 80, 811 P.2d 576, 578 (Ct.App.) (stating that when interpreting a statute, an appellate court is required to consider the plain meaning of the words used and the intended purpose of the statute), *cert. denied*, 112 N.M. 21, 810 P.2d 1241 (1991).

■ Citing *Bober v. New Mexico State Fair*, 111 N.M. 644, 808 P.2d 614 (1991) and *Castillo*, Archibeque argues that this Court has rejected the narrow reading of Section 41–4–6 found in *Wittkowski* and *Gallegos* in favor of a broader interpretation. Archibeque maintains that immunity must be waived under an expansive reading of Section 41–4–6. In *Bober*, we rejected previous narrow interpretations of Section 41–4–6 and

quoted with approval the following language from *Castillo:* " 'Section 41–4–6 ... contemplate[s] waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government....' " *Bober,* 111 N.M. at 653, 808 P.2d at 623 (quoting *Castillo,* 107 N.M. at 205, 755 P.2d at 49). A careful reading of *Bober* and *Castillo* reveals that both cases rejected reading Section 41–4–6 to limit waiver of immunity to those instances where injury occurred due to a physical defect in a building. *Bober,* 111 N.M. at 652–53, 808 P.2d at 622–23; *Castillo,* 107 N.M. at 206, 755 P.2d at 50. *Bober* and *Castillo* favored an interpretation of Section 41–4–6 that permitted waiver of immunity when injury was caused by a dangerous or defective condition on the property surrounding a public building, as well as for injuries caused by defects and dangerous conditions in the building itself. *See Bober,* 111 N.M. at 653, 808 P.2d at 623; *Castillo,* 107 N.M. at 206, 755 P.2d at 50. Notwithstanding, *Bober* and *Castillo* left intact the rule that the security, custody, and classification of inmates does not comprise the "operation" and "maintenance" of penitentiary premises. While *Bober* and *Castillo* support a broader reading of Section 41–4–6 by expanding the definition of "building," neither case supports the argument that Moya–Martinez's immunity must be waived for her alleged negligence in classifying Archibeque as an inmate suitable for release into the general prison population.

Archibeque also claims that immunity should be waived under Section 41–4–6 because his case is factually analogous to *Castillo.* In *Castillo,* a three-year-old boy was severely bitten by a dog roaming loose on the grounds of a housing project owned and operated by County of Santa Fe. 107 N.M. at 205, 755 P.2d at 49. The trial court dismissed a lawsuit brought by the child's mother against the County and County officials, concluding that the governmental entities and employees were immune from suit under the Tort Claims Act. *Id.* The Court of Appeals affirmed. *Id.* We reversed as to the County Housing Authority, noting that the Housing Authority had a duty to maintain the premises in a safe condition and, under the allegations in Castillo's complaint, appeared to be aware of a continuing dangerous problem with loose-running dogs. *Id.* at 206–07, 755 P.2d at 50–51.

■ Archibeque argues that his enemy, Gallegos, was like the loose-running dog in *Castillo,* and that the prison in essence failed to maintain the premises in a safe condition by releasing him into the general population with Gallegos present among the inmates. Archibeque's argument ignores an essential aspect of the decision in *Castillo* that distinguishes *Castillo* from the instant case. In *Castillo,* we noted that loose-running dogs presented an unsafe condition upon the land *as to residents and invitees on the premises. See id.* at 207, 755 P.2d at 51. The roaming dogs in *Castillo* presented an unsafe condition for the public generally, or at least that portion of the public residing in or invited to the housing project. In *Castillo,* waiving immunity under Section 41–4–6 was appropriate in light of the statute's purpose to ensure the safety of *the general public.* No similar situation presents itself in the case at bar. While Moya–Martinez's misclassification of Archibeque put him at risk, the negligence did not create an unsafe condition on the prison premises as to the general prison population. Reading Section 41–4–6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the Tort Claims Act, which recognizes that government, acting for the public good, "should not have the duty to do everything that might be done," and limits government liability accordingly. *See* Section 41–4–2(A); *Gallegos,* 107 N.M. at 351, 758 P.2d at 301. We reject Archibeque's argument that his case is analogous to *Castillo.*

Finally, Archibeque argues that *Silva* is closely analogous to his case and supports his argument that immunity should be waived under Section 41–4–6. In *Silva,* an inmate with serious psychiatric problems committed suicide while incarcerated at a Corrections Department facility. 106 N.M. at 473, 745 P.2d at 381. Plaintiffs brought a wrongful death action, alleging that the negligent failure to provide Silva with special care for his

condition caused his death. *Id.* The trial court dismissed the lawsuit against the Secretary of Corrections and other state defendants and the Court of Appeals affirmed. *Id.* We reversed, holding that the trial court erred by concluding that several statutory waivers of immunity were inapplicable as a matter of law to acts or omissions committed by the Secretary of Corrections while acting within the scope of his duties. *Id.* at 477, 745 P.2d at 385.

We conclude that *Silva* provides no generally applicable principle pertaining to the interpretation of Section 41–4–6 and, therefore, does not support Archibeque's argument that immunity is waived under the facts of this case. At issue in *Silva* was whether the Secretary of Corrections waived immunity under the Tort Claims Act by failing to staff, train, and provide prison health care facilities that would have provided Silva with treatment and oversight for a severe mental disorder characterized by depression and suicidal ideation.[2] *Id.* at 473–74, 745 P.2d at 381–82. We noted that the Secretary's immunity *might* be waived under one or more of three provisions of the Tort Claims Act: Section 41–4–6, Section 41–4–9 (immunity waived for negligent operation of any hospital, infirmary, mental institution, clinic dispensary, medical care home, or similar facilities) or Section 41–4–10 (immunity waived for negligent provision of health care services). *Id.* at 477–78, 745 P.2d at 385–86. We then required the finder of fact to determine whether the Secretary breached duties related to any one of the three waiver provisions listed above following further factual development at trial. *Id.* at 478, 745 P.2d at 386.

Nowhere in *Silva* did we determine that the Secretary's actions waived immunity under Section 41–4–6 or interpret Section 41–4–6 to waive immunity under circum-stances like those presented in the case at bar. To read *Silva* as a case of general applicability, standing for the proposition that Section 41–4–6 waives immunity whenever injury results from a negligently performed administrative task affecting a single inmate, would again ignore the express language and purpose of Section 41–4–6. Moreover, to read *Silva* as applying generally to cases like the instant case would undermine the purpose of the Tort Claims Act by subjecting the State to liability for virtually any mistake made during the administration of corrections facilities that results in injury to an inmate.[3] *See Gallegos,* 107 N.M. at 351, 758 P.2d at 301. We hold that *Silva* must be limited to its specific facts. Consequently, *Silva* does not control the outcome of the instant case. In conclusion, we answer the Tenth Circuit's certified question by holding that Moya–Martinez's immunity is not waived under Section 41–4–6.

**IT IS SO ORDERED.**

FRANCHINI, J., concurs.

RANSOM, C.J., specially concurs.

RANSOM, Chief Justice (specially concurring).

I concur specially to voice my concern with the majority's statement that: "Reading Section 41–4–6 to waive immunity *every time a public employee's negligence creates a risk of harm for a single individual* would subvert the purpose of the Tort Claims Act, which recognizes that government, acting for the public good, 'should not have the duty to do everything that might be done,' and limits government liability accordingly." I am certain that if the *operation or maintenance of a public building* were to give rise to an unreasonable risk of harm for even a single

---

**2.** In *Silva,* the federal district court found that the Secretary and other corrections personnel had "failed to operate by standards and procedures required by the [Duran] [C]onsent [D]ecree." *Id.* at 473, 745 P.2d at 381.

**3.** Even if *Silva* could be read as holding that the Secretary's immunity was waived under Section 41–4–6, it would be factually distinguishable from the instant case for the same reason that

*Castillo* is distinguishable. By failing to adhere to the standards required by the Duran Consent Decree, the Secretary of Corrections in *Silva* created a risk of harm to the general prison population, or at least that segment of the population in need of specialized mental health care and corresponding supervision. While a segment of the population at risk might justify waiver of immunity under Section 41–4–6, a situation in which a single inmate is put at risk is not comparable.

**622**

individual, the immunity granted pursuant to the Act would not apply.

I concur because there was no showing that the general prison population reflected anything but the reasonable and expected risks of prison life. The classification of Archibeque did not change the condition of the premises. I see Archibeque's injuries as having been proximately caused by a discrete administrative decision. As an alternative to releasing Archibeque into the general population, he could have been placed in administrative segregation, a form of protective custody. The risk arose not from a condition of the premises (as with the wild dogs in *Castillo* or, arguably, the inadequate health care facilities in *Silva*); it arose from the classification itself.

Also, I believe the "physical defect" basis for the decisions in *Wittkowski* and *Gallegos* is too narrow. I would not readily be persuaded that a general condition of unreasonable risk from negligent security practices falls outside "operation of a building" in the context of a corrections facility. To focus on words such as "security, custody, and classification" does not aid the analysis. The focus must be on the unreasonable risk of injury arising from operation and maintenance of the premises, in which case there is waiver of immunity, as compared to an administrative act such as the classification of an inmate who is thereby put at risk on premises that are operated and maintained without risk beyond that which is reasonable and expected in prison life. Here, it is telling that Archibeque did not argue that his assailant should have been removed from the general prison population, but only that Archibeque himself should have been placed in administrative segregation.