875 P.2d 393

**Danny CALLAWAY, Plaintiff–Appellant,**

**v.**

**NEW MEXICO DEPARTMENT OF COR-RECTIONS, Warden Robert Tansy, El-mer Bustos, Deputy Warden Lawrence Hicks, Deputy Warden Virgil Garcia, Major Wilfred Romero, Captain Ruben Vigil, Captain Leyba, Recreation Officer Hoak, and Recreation Officer Evelyn Gearhart, in their individual capacities, Defendants–Appellees.**

No. 14525.

Court of Appeals of New Mexico.

March 29, 1994.

Certiorari Denied May 17, 1994.

Elizabeth E. Simpson, Tomita & Simpson, P.C., Albuquerque, for plaintiff-appellant.

Richard C. Bosson and Brian E. Fitzgerald, Bosson & Canepa, P.A., Santa Fe, for defendants-appellees.

## OPINION

FLORES, Judge.

Plaintiff appeals the trial court's dismissal of his claims under the Tort Claims Act. Plaintiff raises the following issues on appeal: whether the trial court erred in finding that (1) Defendants had not been given timely notice of claims pursuant to NMSA 1978, Section 41-4-16(B) (Repl.Pamp.1989); (2)

Plaintiff had failed to state a claim against a law enforcement officer pursuant to NMSA 1978, Section 41–4–12 (Repl.Pamp.1989); and (3) Plaintiff had failed to state a claim pursuant to NMSA 1978, Section 41–4–6 (Repl. Pamp.1989) permitting claims arising from the operation and maintenance of public buildings. We reverse the trial court on issues one and three and affirm the trial court on issue two.

## STANDARD OF REVIEW

■ In the instant case, the trial court decided the issue of notice by considering matters outside the pleadings. "Where matters outside the pleadings are considered on a motion to dismiss for failure to state a claim, the motion becomes one for summary judgment." *Knippel v. Northern Communications, Inc.*, 97 N.M. 401, 402, 640 P.2d 507, 508 (Ct.App.1982). Therefore, we consider the issue of notice as an appeal from a summary judgment. "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). However, summary judgment should not be used as a substitute for trial on the merits so long as one issue of material fact is present in the case. *Ponce v. Butts*, 104 N.M. 280, 283, 720 P.2d 315, 318 (Ct.App. 1986). In addition, when the facts are insufficiently developed or further factual resolution is essential for determination of the central legal issues involved, summary judgment is not appropriate. *National Excess Ins. Co. v. Bingham*, 106 N.M. 325, 328, 742 P.2d 537, 540 (Ct.App.1987).

■ The trial court dismissed the counts based on the second and third issues pursuant to SCRA 1986, 1–012(B)(6) (Repl.1992), for failure to state a claim for which relief can be granted. A "motion [to dismiss] tests the legal sufficiency of the complaint, not the facts that support it." *Thompson v. Montgomery & Andrews, P.A.*, 112 N.M. 463, 464, 816 P.2d 532, 533 (Ct.App.), *cert. denied*, 112 N.M. 388, 815 P.2d 1178 (1991). Therefore, upon reviewing the dismissal of a complaint for failure to state a cause of action, we " 'accept as true all facts well pleaded and question only whether the plaintiff might prevail under any state of facts provable under the claim.' " *California First Bank v. State*, 111 N.M. 64, 66, 801 P.2d 646, 648 (1990) (quoting *Gomez v. Board of Educ.*, 85 N.M. 708, 710, 516 P.2d 679, 681 (1973)).

## FACTS

Plaintiff's complaint alleges the following material facts. He was sentenced to serve a term in the state penitentiary. On February 13, 1990, within hours of his transfer to the penitentiary in Santa Fe, he was severely beaten about the head by at least three other inmates in the F–2 recreation area at the main facility. Plaintiff's attackers, each weighing between 220 and 290 pounds, were known gang members with a prior history of violence against other inmates. The structural design and layout of the recreation room added to the danger of the situation in that the room has blind corners, a stair well, and other areas which are shielded from direct observation by the recreation officers. In addition, potential weapons such as weight bars and pool cues are located in the recreation area. Furthermore, the recreation room has two levels: a bottom level which houses the weight equipment, and a top floor which contains pool and foozball tables. Only two recreation officers were assigned to the entire recreation room and responsible for maintaining security and ensuring the safety of the inmates. Additional facts will be discussed throughout the opinion as relevant.

## ISSUE ONE

Subsequent to the February 13, 1990 attack, Plaintiff's wife (Wife) made several inquiries regarding the attack on Plaintiff. First, a request dated March 3, 1990 for "a complete [s]ummary of [Plaintiff's] [m]edical [r]ecords and all information on the incident of February 13, 1990" was signed by Plaintiff and Wife and submitted to the Department of Corrections. Second, Wife asserts she wrote a letter to the Governor's Office on March 6, 1990 regarding the incident. However, there is no copy of the letter in the record, and the parties dispute the contents of the letter. Nevertheless, it is apparent, based on the response letter from the Governor's Office, that the Governor's Office re-

ceived a letter from Wife and forwarded it to the Secretary of the Department of Corrections with a request that the Secretary "take whatever action he deems appropriate." Third, on April 25, 1990, the Department of Corrections acknowledged receipt of Wife's March 6, 1990 letter of inquiry and informed Wife that Plaintiff was being treated for his injuries and was recovering from the recreation room incident. Fourth, further correspondence between the Department of Corrections and Plaintiff was initiated by the attorney engaged to represent Plaintiff and Wife. On April 19, 1990, their attorney informed the Department of Corrections by letter that he represented Plaintiff and Wife regarding the attack on Plaintiff in the recreation room. The attorney's letter further requested that immediate action be taken to investigate the incident and expressed the belief that Plaintiff and Wife "are entitled to know what happened, why and who did it[,] to determine some responsibility by the guilty persons." Fifth, Plaintiff contends his caseworker, an employee of the Department of Corrections, recorded in her March 6, 1990 notes that she and Plaintiff had discussed the fact that Wife was "working with lawyers [regarding] charges because of what happened to him." Sixth, there is conflicting evidence whether a chaplain at the penitentiary was directly informed of the likelihood that the Department of Corrections would be sued over this incident. Plaintiff's father asserts that he communicated that information to a prison chaplain. However, the chaplain denied that such a communication ever took place.

■ Since Plaintiff admits that written notice was not provided to the Risk Management Division pursuant to Section 41–4–16(A), the focus of the inquiry upon appeal is whether the Department of Corrections had actual notice of the occurrence within ninety days of the date of the occurrence pursuant to Section 41–4–16(B). The standard for actual notice under Section 41–4–16(B) is not simply actual notice of the occurrence of an accident or injury. *Dutton v. McKinley County Bd. of Comm'rs,* 113 N.M. 51, 53, 822 P.2d 1134, 1136 (Ct.App.1991). Nor does actual notice under Section 41–4–16(B) require that the notice of a claim indicate that

a lawsuit will in fact be filed against the state, but rather, that the state must be given notice of a likelihood that litigation may ensue, in order to reasonably alert the state to the necessity of investigating the merits of the potential claim. *Smith v. State ex rel. N.M. Dep't of Parks & Recreation,* 106 N.M. 368, 371, 743 P.2d 124, 127 (Ct.App. 1987). *See Powell v. New Mexico Highway & Transp. Dep't,* 117 N.M. 415, 418, 872 P.2d 388, 391 (N.M.Ct.App.1994) (actual notice to particular state agency or department involves notice of the occurrence or accident and notice that litigation is likely to ensue).

■ "As a general rule, whether or not notice has been given or received is a question of fact...." *Id.* Summary judgment should not be used to decide an issue of fact, but rather to determine if an issue of fact exists. *Gonzalez v. Gonzalez,* 103 N.M. 157, 164, 703 P.2d 934, 941 (Ct.App.1985). Summary judgment is not appropriate where there is the slightest doubt as to the existence of an issue of material fact. *Tinley v. Davis,* 94 N.M. 296, 298, 609 P.2d 1252, 1254 (Ct.App.1980). Furthermore, even where basic facts are undisputed, if equally logical but conflicting inferences can be drawn from the facts, then summary judgment should be denied. *Id.*

■ In the instant case, the parties dispute certain material facts such as the contents of Wife's March 6, 1990 letter to the Governor's Office and whether the chaplain was informed of the likelihood that Plaintiff would sue the Department of Corrections. Furthermore, we determine that, taken together, the following undisputed facts of this case allow the trier of fact to draw equally logical but conflicting inferences from the facts: (1) the letter from Plaintiff's attorney to the Department of Corrections; (2) the request for Plaintiff's medical records; (3) the response to Wife's March 6, 1990 letter from the Governor's Office; and (4) the transfer by the Governor's Office of said letter to the Secretary of the Department of Corrections with instructions that the Secretary "take whatever action he deems appropriate." *See id.* Therefore, we hold that the trial court erred in determining that as a

matter of law Defendants had not received actual notice under Section 41–4–16(B). Accordingly, we reverse the trial court's determination on the issue of notice and remand with instructions that the issue of whether Defendants received actual notice is to be determined by the trier of fact.

*ISSUE TWO*

■ Plaintiff asserts that corrections officers Captains Vigil and Leyba and recreation officers Hoak and Gearhart are law enforcement officers under NMSA 1978, Section 41–4–3(D) (Repl.Pamp.1989), for purposes of waiver of immunity under the Tort Claims Act. In support of this assertion, Plaintiff relies on: (1) NMSA 1978, Section 33–1–10(A) (Repl.Pamp.1990) which empowers corrections officers under certain situations to act as peace officers to make arrests; and (2) the following dicta in *Anchondo v. Corrections Department*, 100 N.M. 108, 666 P.2d 1255 (1983): "It is clear that the Legislature did not intend all persons working at the state's correctional facilities to be considered or treated as peace officers or law enforcement personnel, only those persons who possess these responsibilities as their primary duties." *Id.* at 110, 666 P.2d at 1257.

Defendants contend that Section 41–4–3(D) does not apply to corrections officers because their principal duties do not relate to individuals accused of crimes, maintaining the public order or making arrests for crimes. In support of this argument, Defendants rely on the statutory duties of prison guards as set forth in NMSA 1978, Section 33–2–15 (Repl. Pamp.1990):

The employees of the penitentiary shall perform such duties in the charge and oversight of the penitentiary, care of the property belonging thereto, and in the custody, government, employment and discipline of the convicts as shall be required of them by the corrections division [corrections department] or the warden, in conformity with law and rules and regulations prescribed for the government of the penitentiary.

Defendants also rely on *Vigil v. Martinez*, 113 N.M. 714, 720–21, 832 P.2d 405, 411–12 (Ct.App.1992), which determined that proba-

tion and parole officers were not law enforcement officers under Section 41–4–3(D) because their principal duties were not those of law enforcement officers since they performed supervisory rather than custodial duties, only incidentally maintained public order, and dealt with individuals convicted of, rather than accused of, crimes. Furthermore, Defendants point out that this Court in *Vigil* found the reasoning in *Osborn v. Governor of New Mexico*, Civil 80–178 (1983) (Campos, J.), an unpublished memorandum opinion from the United States District Court for the District of New Mexico, persuasive and urge this Court to adopt the reasoning of *Osborn* in the instant case. In *Osborn*, Judge Santiago Campos held that prison guards in the Department of Corrections are not "law enforcement officers" for purposes of Section 41–4–3(D) because: (1) the principal duties of prison guards are to hold in custody persons who have already been convicted rather than merely accused of a criminal offense, slip op. at 9–10; (2) maintenance of public order relates to a public not a penitentiary setting, slip op. at 8; and (3) although prison guards may have the supplemental power to arrest pursuant to the guidelines of Section 33–1–10, their principal statutory duties are those set forth in Section 33–2–15, slip op. at 11.

We find the reasoning of *Osborn* persuasive. Accordingly, we affirm the trial court's determination that corrections officers are not law enforcement officers under Section 41–4–3(D).

*ISSUE THREE*

Plaintiff relies on Section 41–4–6, which provides that "[I]mmunity ... does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building ...," for the proposition that immunity is waived in the instant case. Based on the allegations made in the complaint and preserved on appeal, we interpret Plaintiff's premises liability argument to be that the Defendants were negligent in allowing known, dangerous gang members to roam loose among the general prison population.

In particular, Plaintiff contends that Defendants were negligent in letting the gang members loose among new orientees in such a potentially dangerous area as the recreation room, which was shielded from the corrections officers' direct observation due to the blind corners and stair well and which contained potential weapons such as weight bars and pool cues. Plaintiff also specifically alleges that the gang members had committed prior acts of violence against other inmates and that despite Defendants' knowledge of the gang members' known propensity for violence, Defendants failed to take any action to protect Plaintiff and other inmates in the prison.

■ We do not interpret Plaintiff's argument as one of design defect as urged by Defendants. However, to the extent that Plaintiff's argument relies on waiver of immunity due to a design defect in the recreation area, we hold that New Mexico case law is clear that Section 41–4–6 does not waive immunity for claims of negligent design of a building. See Rivera v. King, 108 N.M. 5, 12, 765 P.2d 1187, 1194 (Ct.App.), certs. denied, 107 N.M. 785, 765 P.2d 758 (1988).

Plaintiff relies on Castillo v. County of Santa Fe, 107 N.M. 204, 755 P.2d 48 (1988), for the proposition that Section 41–4–6 contemplates waiver of immunity where due to the alleged negligence of public employees, an injury arises from an unsafe, dangerous, or defective condition on property the government owns and operates. In Castillo, our Supreme Court determined that the plaintiff had adequately stated a claim under Section 41–4–6 by alleging in the complaint that loose-running dogs on the common grounds of the county-owned and county-operated public housing project represented an unsafe condition, provided the county knew or should have known of the danger and that the danger was foreseeable. Id. at 205–07, 755 P.2d at 49–51. Plaintiff finds further support for his argument in Bober v. New Mexico State Fair, 111 N.M. 644, 653, 808 P.2d 614, 623 (1991), which held that liability under Section 41–4–6 may arise not just from maintenance of the property, but also from the operation of such property, and that it was therefore not necessary to allege a phys-ical defect under Section 41–4–6 in order to waive liability.

Defendants urge us to interpret Castillo and Bober as retaining a physical defect requirement at least as regards such inherently dangerous places as prisons. Defendants further contend that it would be against legislative policy to waive liability in the instant case because it would "authorize a multitude of garden[-]variety negligence lawsuits for the sole benefit of those persons in our society who are probably the least deserving, convicted criminals, merely because they are locked up in a building which is made inevitably dangerous by their very presence and misconduct." Defendants also rely on the recent Supreme Court decision Archibeque v. Moya, 116 N.M. 616, 866 P.2d 344 (1993), for the proposition that Section 41–4–6 does not apply to an administrative function associated with the operation of a corrections system such as the misclassification of an inmate.

■ We decline to follow Defendants' restrictive interpretation of either Castillo or Bober. We note that our Supreme Court in Bober explicitly rejected the narrow view taken by the Court of Appeals in Gallegos v. State, 107 N.M. 349, 351, 758 P.2d 299, 300 (Ct.App.1987), cert. quashed, 107 N.M. 314, 757 P.2d 370 (1988); Martinez v. Kaune Corp., 106 N.M. 489, 491, 745 P.2d 714, 716 (Ct.App.), cert. denied, 106 N.M. 439, 744 P.2d 912 (1987); and Pemberton v. Cordova, 105 N.M. 476, 478, 734 P.2d 254, 256 (Ct.App. 1987), for restricting liability under Section 41–4–6 only to where the injury resulted from a physical defect of the premises. Bober, 111 N.M. at 652–53, 808 P.2d at 622–23. Instead, our Supreme Court specified that the correct view was the broader one stated in Castillo: "'Section 41–4–6 ... contemplate[s] waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government....'" Bober, 111 N.M. at 653, 808 P.2d at 623 (quoting Castillo, 107 N.M. at 205, 755 P.2d at 49). Furthermore, absent clear legislative intent to the contrary, we decline to interpret or apply Section 41–4–6 more restrictively based solely on a party's status as a prison

inmate. *See Gonzales v. Oil, Chem. & Atomic Workers Int'l Union,* 77 N.M. 61, 68, 419 P.2d 257, 262 (1966) (A statute is to be read and given effect as written and the words used in a statute are to be given their ordinary and usual meaning unless a different intent is clearly indicated.). *See also Whitley v. New Mexico State Personnel Bd.,* 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993).

In deciding whether Plaintiff has stated a claim under Section 41–4–6, this Court must follow applicable precedents of our Supreme Court. *See Alexander v. Delgado,* 84 N.M. 717, 718, 507 P.2d 778, 779 (1973). *Archibeque* provides this Court with guidance for our determination that under the facts of the instant case, Plaintiff has successfully stated a claim under Section 41–4–6. Plaintiff's argument that Defendants were negligent in allowing the known and dangerous gang members loose to victimize the general prison population distinguishes it from the facts and argument in *Archibeque.* In *Archibeque,* the plaintiff argued that he was negligently misclassified as an inmate who could be placed in the general prison population. 116 N.M. at 618, 866 P.2d at 346. The defendant in *Archibeque* failed to check an available printout of current inmates, gave the plaintiff misinformation about his enemy's presence at the penitentiary, and permitted the plaintiff to be released in the general prison population. *Id.* Our Supreme Court determined that negligent classification of the plaintiff did not constitute the operation and maintenance of the prison's physical premises under Section 41–4–6 because it was an administrative function. *Id.* at 619, 866 P.2d at 347. The Supreme Court reasoned that although Archibeque was "put [ ] at risk, the negligence did not create an unsafe condition on the prison premises as to the general prison population." *Id.* at 620, 866 P.2d at 348. The majority in *Archibeque* specified that "[w]hile a segment of the population at risk might justify waiver of immunity under Section 41–4–6, a situation in which a single inmate is put at risk is not comparable." *Id.* at 621 n. 3, 866 P.2d at 349 n. 3. Chief Justice Ransom in his special concurrence elaborated on the significance between a "discrete administrative decision" which does not waive immunity and "a general condition of unreasonable risk from negligent security practices" which could waive immunity. *Id.* at 622, 866 P.2d at 350. Moreover, Chief Justice Ransom stated that it is "telling that Archibeque did not argue that his assailant should have been removed from the general prison population, but only that Archibeque himself should have been placed in administrative segregation." *Id.* However, Plaintiff in the instant case does present exactly that argument.

▉ Accordingly, based on the facts alleged in his complaint, we hold that Plaintiff has stated a claim sufficient to waive immunity under Section 41–4–6 because Defendants knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable. *See Castillo,* 107 N.M. at 205–07, 755 P.2d at 49–51.

We find additional support for our holding from other jurisdictions which have at times imposed liability in situations similar to that presented in the instant case where it has been shown the inmate assailant was unusually dangerous and the prison authorities had knowledge of the danger posed by the inmate. *See generally* David A. Johns, Annotation, *Liability of Prison Authorities for Injury to Prisoner Directly Caused by Assault by Other Prisoner,* 41 A.L.R.3d 1021 (1972 & Supp.1993); *see also* Jimmie E. Tinsley, *Governmental Entity's Liability for Injuries Inflicted on Prisoner in Assault by Fellow Prisoner,* 33 Am.Jur. Proof of Facts 2d 303, § 9 (1983) ("Where the evidence indicates that the assailant posed some particular threat, either to other prisoners generally or to the plaintiff inmate specifically, and that the authorities were aware of such fact, liability is often imposed. On the other hand, where there is a lack of evidence that the assailant was known to be any more dangerous than other inmates, liability is frequently denied."). Thus, we hold that the trial court erred in dismissing Plaintiff's complaint for failure to state a claim under Section 41–4–6.

## CONCLUSION

Based on the foregoing, we reverse the trial court on issues one and three, affirm on issue two, and remand for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DONNELLY and APODACA, JJ., concur.