**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DAVON LYMON,

Plaintiff-Appellant,

v.

ARAMARK CORPORATION; JOSEPH
NEUBAUER; CHARLIE CARRIZALES,

Defendants,

and

WEXFORD CORPORATION, JOHN
SANCHEZ; ABNER HERNANDEZ;
JOE WILLIAMS; NEW MEXICO
DEPARTMENT OF CORRECTIONS,

Defendants-Appellees.

No. 11-2210
(D.C. No. 1:08-CV-00386-JB-DJS)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff Davon Lymon appeals from three district court orders: one denying class certification; another dismissing his belatedly asserted claim against defendant Wexford Corporation under the statute of limitations; and a third dismissing his claims against the other defendants-appellees for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[1] We affirm the dismissal orders for the reasons explained below. In light of that disposition on the merits, we dismiss as moot the appeal as it relates to class certification. *See Spaulding v. United Transp. Union*, 279 F.3d 901, 915 (10th Cir. 2002); *Price v. FCC Nat'l Bank*, 4 F.3d 472, 475 (7th Cir. 1993).

## I.      PLEADING HISTORY

Mr. Lymon commenced this action in state court in August 2005. His pro se complaint alleged that while a prisoner at the Los Lunas, New Mexico Correctional Facility, he was assigned by Officer John Sanchez to work in the prison kitchen, run by Aramark Corporation, where he was later injured due to a preexisting condition (surgically repaired rotator cuff). He alleged that Officer Sanchez violated prison policy by assigning him to the work without a medical clearance, and that Aramark employees required him to do kitchen tasks that were contrary to a medical prescription prohibiting him from lifting objects with his left arm. On July 3, 2005, when lifting trays in the kitchen, his shoulder gave out and he fell, prompting him to pursue negligence and breach-of-contract claims against Aramark and its employees,

---

[1]      The claims against the remaining defendants were dismissed as a result of settlement.

and a negligence claim against Officer Sanchez. He also complained that Captain Abner Hernandez foreclosed his use of the prison's formal grievance process for the incident (by deeming the matter resolved informally through an acknowledgment of the lack of Mr. Lymon's required medical clearance), though he did not assert a legal claim against Captain Hernandez at that time.

After Mr. Lymon obtained counsel and sought to amend his pleadings to add, *inter alia*, claims under 42 U.S.C. §§ 1981 and 1983, the case was removed to federal court. In February 2009, Mr. Lymon filed a First Amended Complaint. This added little in the way of factual allegations, but expanded the number and complexity of his legal claims. His claims against prison officials and the department of corrections were multiplied through respondeat superior theories. His state tort claims now incorporated allegations referring to the state governmental immunity/tort claims act. Captain Hernandez became a defendant, and constitutional permutations of the tort claims against him and Officer Sanchez were added. Mr. Lymon further alleged that defendants had interfered with his right to contract and imposed on him a condition of involuntary servitude in violation of the Thirteenth Amendment.

Finally, in December 2009, Mr. Lymon amended his pleadings once more. For the first time he asserted a claim against Wexford Corporation, alleging that it did not provide him with adequate care following his injury in the kitchen. He also alleged more generally that it failed to conduct inmate-intake and infections-disease examinations and ran a below-standard hepatitis C Clinic.

## II.    DISTRICT COURT DISPOSITION

The district court disposed of the relevant claims in two very thorough orders. We summarize them here.

The first order, *Lymon v. Aramark Corp.*, 728 F. Supp.2d 1222 (D. N.M. 2010), painstakingly parsed through the various claims asserted against the state defendants, explaining why none was legally viable.  Count I against Officer Sanchez for negligently classifying Mr. Lymon for kitchen work, and Count II against Captain Hernandez for negligently denying access to the formal grievance process and thereby insulating Sanchez and Aramark from legal accountability, failed because the New Mexico Tort Claims Act (NMTCA) did not waive governmental immunity for the alleged conduct.  Specifically, N.M. Stat. § 41-4-6, which waives immunity for "operation or maintenance of any building," concerns unsafe conditions on government property and does not apply to the administrative functions involved here.  *Lymon*, 728 F. Supp.2d at 1266-68 (relying primarily on *Archibeque v. Moya*, 866 P.2d 344, 347 (N.M. 1993) (holding prison's negligent classification of prisoner fell outside waiver of immunity)).  And N.M. Stat. § 41-4-12, which waives immunity for certain torts committed by "law enforcement officers," does not apply to corrections officers.  *Lymon*, 728 F. Supp.2d at 1268-70 (relying primarily on *Callaway v. N.M Dep't of Corr.*, 875 P.2d 393 (N.M. App. 1994) (holding corrections officers are not law enforcement officers under § 41-4-12)).

- 4 -

Counts III and IV assert tort claims against the New Mexico Department of Corrections (NMDOC) and its Secretary, Joe Williams. To the extent these claims are based on respondeat superior, the district court held they failed because the underlying claims against Officer Sanchez and Captain Hernandez failed. *Lymon*, 728 F. Supp.2d at 1271 (relying on *Silva v. State*, 745 P.2d 380, 385 (N.M. 1987) (noting respondeat superior liability under the NMTCA first requires "a negligent public employee who [himself] meets one of the waiver exceptions under [the NMTCA]") (further quotation omitted)). To the extent they assert direct claims of negligent policy, training, supervision, etc., the court held the claims fell outside the waivers of immunity in the NMTCA. *Id.* at 1272-73.

Count V, a § 1983 claim against Officer Sanchez and Captain Hernandez, alleges that their combined conduct forced Mr. Lymon to work for Aramark in the prison kitchen in violation of his procedural and substantive due process rights. The district court rejected the procedural aspect of the claim for lack of a protected liberty interest in prison work assignments. *Id.* at 1258-59. The court rejected the substantive aspect of the claim for lack of conduct egregious enough to satisfy the controlling shock-the-conscience standard. *Id.* at 1259-60.

Count VI claims that Officer Sanchez's conduct reflected racist interference with Mr. Lymon's right to contract, specifically in relation to his work with Aramark, in violation of §§ 1981 and 1983. The district court rejected this claim for lack of any actual loss of a contractual interest. That is, even assuming the existence of the

oral contract that Mr. Lymon alleged had been created between him and Aramark, Sanchez's conduct assisted rather than impeded its formation. *Id.* at 1263.

Counts VII and VIII seek to impose liability on Secretary Williams and NMDOC for an unwritten policy of ignoring Aramark's substandard food service and the misclassification of inmates for that service who are medically unfit for the assignment, particularly those known to carry infectious disease. Noting that the Second Amended Complaint did not allege any harm suffered by Mr. Lymon from the alleged policy, the district court held that his claims failed for lack of any actual injury. *Id.* at 1262. In this regard, the court refused to consider an affidavit that Mr. Lymon claimed showed an injury,[2] holding that a conversion from dismissal to summary judgment proceedings was not warranted. The court relied on the fact that the affidavit had been submitted months before Mr. Lymon filed his Second Amended Complaint, yet he elected not to include its averments in his pleading. *Id.* at 1261. The court cited its prior leniency in affording Mr. Lymon repeated opportunities to amend his pleadings and concluded that further delay occasioned by conversion of the pending motion to dismiss into a motion for summary judgment was not warranted. *Id.* at 1261-62.

---

[2] The affidavit stated that Mr. Lymon had hepatitis C, without saying when or how he contracted the disease, much less attributing it to the prison's food service. *See* App. at 90. His continuing contention that this somehow demonstrates an injury supporting his claims in this case is meritless.

Count XIII asserts that working in the prison kitchen constituted involuntary servitude in violation of Mr. Lymon's rights under the Thirteenth and Fourteenth Amendments. The district court relied on unopposed case law, and the language of the Thirteenth Amendment itself,[3] to hold that prison labor is not impermissible involuntary servitude. *Id.* at 1264 (citing *Tracy v. Keating*, 42 F. App'x 113, 116 (10th Cir. 2002)); *see also Ruark v. Solano*, 928 F.2d 947, 949 (10th Cir. 1991), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996); *Williams v. Henagan*, 595 F.3d 610, 621-22 (5th Cir. 2010).

Count XIV is the last claim asserted against the state defendants. In this claim Mr. Lymon alleges that the classification decisions of Officer Sanchez represent a threat to public health, due to his assignment of inmates with infectious diseases to work in the prison kitchen. He further alleges that a decision that places the public or any inmate at risk from a health hazard is against federal policy and hence actionable under the Supremacy Clause. The district court again noted that there was no allegation that Mr. Lymon (or anyone else) contracted an infectious disease as a result of Officer Sanchez's classification decisions, *see also* note 2 above, and held that the count failed to state a claim upon which relief could be granted and that Mr. Lymon lacked standing to assert such a claim in any event, *Lymon*, 728 F. Supp.2d at 1264-65.

---

[3]   The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States."

The second order under review dismissed Mr. Lymon's claim for inadequate medical care, newly initially asserted against Wexford Corporation in the Second Amended Complaint, as barred by the applicable statutes of limitation. *See* App. at 236 (Memorandum Opinion and Order filed July 7, 2010). For purposes of § 1983, the district court applied the three-year limitation period for personal injury actions set out in N.M. Stat. § 37-1-8. App. at 250-51; *see Garcia v. LeMaster*, 439 F.3d 1215, 1217 n.3 (10th Cir. 2006). For purposes of the state law aspect of the claim, the court noted that the NMTCA governs tort actions against prison health care providers, *see* N.M. Stat. § 41-4-3(F)(7), and applied its two-year limitations period, *id.* § 41-4-15. App. at 252. Under both provisions, the claim against Wexford Corporation that Mr. Lymon first sought to add in April 2009, was facially time barred.

Mr. Lymon advanced several arguments to avoid the time-bar, none of which were successful. The district court rejected his effort to invoke the relation-back principle in Fed. R. Civ. P. 15(c), holding that nothing in the earlier pleadings would have given Wexford Corporation notice that Mr. Lymon had any complaint about his medical treatment, much less that he would have brought suit over it earlier but for a mistake about the identity of the proper defendant. App. at 255-56. As for his attempt to characterize his claim as sounding in contract—despite its assertion as a "deliberate indifference" claim and the absence of any allegation of a breached contractual obligation, *see* App. at 157—in order to invoke the longer limitations

- 8 -

periods in N.M. Stat. § 31-1-3 (six years for action on written contract) and § 31-3-4 (four years for action on oral contract), the court noted that the nature of the right sued upon controls and this claim for damages for personal injury clearly sounded in tort, not contract, App. at 253-54. The court also rejected Mr. Lymon's argument for delayed accrual, because whether or not he knew the full extent of his injury, he was aware of its existence and the inadequate care alleged as its cause when the incident in the kitchen occurred. *Id.* at 254-55. Finally, the court dismissed his argument for equitable tolling based on the other defendants' delays in answering his earlier pleadings, because this did not preclude him from adding a claim, or filing a separate lawsuit, against Wexford Corporation in timely fashion. *Id.* at 254-55.

### III. CONTENTIONS ON APPEAL

In contrast to (perhaps because of) the thorough nature of the district court's orders, Mr. Lymon's appellate briefing is insubstantial and unpersuasive. Much of the district court's analysis is effectively unchallenged, and it is not our role to act as advocate by scrutinizing that which the appellant has not put in issue. Limiting our review to the arguments advanced on appeal, we readily affirm for substantially the reasons stated by the district court.

Much of Mr. Lymon's briefing concerns the affidavit touched on earlier. At some points, he challenges the district court's refusal to consider the affidavit; at others, he simply refers to the affidavit in support of other arguments. Obviously, once we conclude that the district court properly refused to consider the affidavit, the

latter arguments lose their premise and fail as well. The district court noted that the affidavit, which was neither attached to nor referenced in the Second Amended Complaint,[4] was not part of the pleadings for purposes of the motion to dismiss. The court concluded that conversion of the motion to one for summary judgment to permit consideration of the affidavit—requiring further delay of the proceedings for the parties to marshal and present evidence on claims already subject to challenge for their facial insufficiency—was not warranted. This prudent decision was within the court's discretion, *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998), and we see nothing, particularly in the points raised by Mr. Lymon on appeal, to suggest it abused that discretion.

Mr. Lymon notes that his initial pleadings were verified and hence could have been accepted as affidavits as well.[5] That is immaterial. The status of the superseded pleadings as potential affidavits has nothing to do with whether the affidavit at issue should have been deemed part of the Second Amended Complaint. Moreover, if the factual allegations in these earlier pleadings—reproduced in the Second Amended Complaint and assumed to be true for purposes of the motion to dismiss—were legally insufficient to state a claim for relief, they perforce were not, as factual

---

[4] The affidavit was submitted months before the filing of the Second Amended Complaint, when it was attached to a motion for reconsideration of an earlier order denying amendment.

[5] He also refers in passing to another affidavit, submitted by counsel earlier in the case. That affidavit relates to service-of-process matters and is not remotely pertinent to the issue at hand.

averments, sufficient to require the court to postpone its disposition of the case in favor of protracted summary judgment proceedings. Mr. Lymon's fallback argument that defendants waived any objection to his use of the affidavit in opposition to their motion to dismiss the Second Amended Complaint because they did not object when he submitted it as a mere attachment to a filing made *months before they even moved to dismiss the Second Amended Complaint*, borders on the frivolous.

Mr. Lymon's briefing on the substance of his claims fares no better. As noted earlier, much of what he argues depends on his affidavit, which we have concluded the district court properly refused to consider.[6]

Mr. Lymon takes issue with the district court's analysis of the NMTCA's applicability to his state tort claims, but his conclusory objections in this respect are unpersuasive. In holding that Officer Sanchez's assignment of prisoners to work in the kitchen was not actionable under the NMTCA, the district court relied on the New Mexico's Supreme Court's decision in *Archibeque v. Moye*, which held that the administrative classification of a prisoner—there, for entry into the general prison population—falls outside the NMTCA's limited waiver of immunity for dangerous

---

[6] We note that the affidavit, particularly the handwritten letter attached to it, relates events involving Officer Sanchez that occurred years after this action was filed and that do not concern the prison kitchen. The appropriate course to pursue legal redress for such matters would have been either to move to supplement the pleadings under Fed. R. Civ. P. 15(d), or to commence another action. The affidavit does refer to one claim in the Second Amended Complaint, but that is the claim against Wexford Corporation dismissed on a legal basis (statute of limitations) to which the affidavit is immaterial.

conditions on government premises in N.M. Stat. § 41-4-6.  *See Archibeque*,

866 P.2d at 346-349.  Mr. Lymon states that *Archibeque* is distinguishable on seven

bases, summarily listed as bullet points.  *See* Aplt. Opening Br. at 12.  The first states

"Fact pattern is different," which presumably refers to the third and fourth points that

state "[t]he Corrections Officer  [in *Archibeque*] was strictly an Administrative

Officer" and "[i]n Mr. Lymon's Affidavit Sanchez is mainly a Line Officer."  *Id.*  But

*Archibeque* did not turn on the job title of the officer who made the classification

decision.  Rather, the court looked to the nature of the decision itself, holding that

prison classification served an administrative function distinct from the relevant

statutory category of "operation and maintenance" of the prison premises.  866 P.2d

at 347.  The second point advanced by Mr. Lymon, that *Archibeque* was a decision

on a certified question and thus somehow less authoritative is meritless.  The fifth

and sixth points refer to unrelated conduct of Officer Sanchez taken from the

properly rejected affidavit.

The seventh point just cryptically states: "FN 3 p. 621 in **Achebeque [sic] v.**

**Moye** concerning the need for more than one inmate to be named as injured."  Aplt.

Opening Br. at 12.  That is not proper argument, *see United States v. Wooten*,

377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider issues adverted to

in a perfunctory manner, unaccompanied by some effort at developed

argumentation." (internal quotation marks omitted)), but a separate comment is

warranted.  Insofar as Mr. Lymon is contending that the cited footnote suggests

NMTCA immunity might not apply to an administrative decision that causes injury to groups of persons (such as the sickening of multiple inmates served food by infected prisoners assigned to work in the kitchen), we note that the Second Amended Complaint does not allege any such harm even to Mr Lymon, much less to anyone else. Also inadequate as appellate argument is the string cite following the bullet points, introduced with the conclusory statement that Mr. Lymon "offers other New Mexico cases which are favorable to his interpretation of NMTCA." Aplt. Opening Br. at 12.[7]

Most of Mr. Lymon's arguments concerning his constitutional claims derive from the content of the properly rejected affidavit and thus cannot succeed. He does, however, present a cursory legal argument to support his involuntary-servitude claim. In an effort to circumvent the established principle, noted by the district court, that prison inmates may be forced to work without violating the Thirteenth Amendment, he insists his involuntary-servitude claim is, rather, for forcing inmates to work

---

[7] The cited cases are a mix of NMTCA immunity and statute-of-limitations decisions with no clear import for our facts here. But included in the string cite is *Silva v. State*, 745 P.2d 380, the case discussed in the *Archibeque* footnote mentioned in the seventh bullet point. *Silva* held that § 41-4-6 could potentially waive immunity for inadequacies in a prison's "staffing, training, and provision for facilities which would have provided [a decedent inmate] a course of treatment and acute mental health care" for the illness that led to his suicide. *Silva*, 745 F.3d at 381-82, 385. This case (limited to its facts by *Archibeque*, which held that it did not create a general rule of liability for administrative functions including inmate classification, 866 P.2d at 349), was fully addressed, in conjunction with *Archibeque*, by the district court here, *see Lymon*, 729 F. Supp.2d at 1271-73, and Mr. Lymon offers nothing by way of argument to indicate any error in the district court's thorough analysis.

- 13 -

*against legitimate medical limitations*. But this argument throws the constitutional claim actually alleged out with the bathwater. There is a constitutional prohibition dealing with the disregard of medical limitations, though it is not the Thirteenth Amendment provision against involuntary servitude invoked in the Second Amended Complaint. Rather, it is the Eighth Amendment's prohibition on cruel and unusual punishment—which has never been the constitutional basis for any of Mr. Lymon's claims against the state defendants.

We have nothing to add with respect to the dismissal of the claim belatedly asserted against Wexford Corporation. The district court's analysis of the issues surrounding application of the proper statute of limitations to this claim is quite thorough and nothing Mr. Lymon says on appeal persuades us of the presence of any error in the decision.

Finally, we note that while we have considered all of the contentions advanced by Mr. Lymon on appeal, we have addressed here only those points warranting explicit comment. In this same vein we note that any new arguments belatedly raised in the reply brief are deemed waived. *See Aviva Life & Annuity Co. v. F.D.I.C.*, 654 F.3d 1129, 1136 n.6 (10th Cir. 2011).

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Wade Brorby
Senior Circuit Judge